UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERICA S.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

6:20-CV-06408 EAW

# INTRODUCTION

Represented by counsel, Plaintiff Erica S. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 11), and Plaintiff's reply (Dkt. 13). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is granted in part, the Commissioner's motion (Dkt. 11) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed her application for SSI on February 3, 2016. (Dkt. 7 at 19).[1] The claim was initially denied on May 9, 2016. (*Id.*). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Ellen Bush on September 12, 2018. (*Id.*). Plaintiff appeared in Rochester, New York, and the ALJ presided over the hearing from Lawrence, Massachusetts. (*Id.*). ALJ Bush was unavailable to issue a decision, so the matter was reassigned and on April 25, 2019, ALJ John Benson issued an unfavorable decision. (*Id.* at 19-30). Plaintiff requested Appeals Council review; her request was denied on April 15, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since the application date. (Dkt. 7 at 21).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of autism spectrum disorder ("ASD"), Attention Deficit Hyperactivity Disorder ("ADHD"),

depression, and post-traumatic stress disorder ("PTSD"). (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of irritable bowel syndrome, asthma, and Vitamin D deficiency were non-severe. (*Id.* at 22).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 12.04, 12.05, 12.06, and 12.10 in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, except with the following additional limitations:

> [Plaintiff] should avoid respiratory irritants. Further, she is limited to performing simple routine tasks with no public interaction. Finally, she cannot perform team or tandem tasks; however, she can occasionally interact with co-workers and supervisors.

(*Id.* at 24-25).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 28). At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including the representative occupations of warehouse worker, night janitor, and packager. (*Id.* at 29). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act since February 3, 2016, the application date. (*Id.*).

II.     **Remand of this Matter for Further Proceedings is Necessary**

Plaintiff asks the Court to remand this matter to the Commissioner for further administrative proceedings, arguing: (1) the ALJ failed to fully develop the record and

obtain treatment notes from Plaintiff's treating psychologist; and (2) the ALJ failed to properly apply the treating physician rule. (Dkt. 8-1). For the reasons set forth below, the Court finds that the ALJ failed to develop the record, and this error necessitates remand for further administrative proceedings.

A.     **Failure to Develop the Record**

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Puckett v. Berryhill*, No. 17-CIV-5392 (GBD)(KHP), 2018 WL 6061206, at *2 (S.D.N.Y. Nov. 20, 2018). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). "The ALJ's duty to develop the record applies to both *pro se* and represented parties, and is heightened in the case of *pro se* plaintiffs." *Lopez v. Comm'r of Soc. Sec.*, No. 17-CV-1504(KAM), 2018 WL 5634929, at *5 (E.D.N.Y. Oct. 31, 2018). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the

administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information . . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

In the written determination, the ALJ found that Plaintiff had the severe impairments of ASD, ADHD, depression, and PTSD. (Dkt. 7 at 21). The ALJ assessed little weight to the opinion from Plaintiff's treating psychologist Lynn Lambert, Psy.D., who opined that Plaintiff is unable to work due to her autism spectrum disorder and PTSD. (*Id.* at 661). As described by the ALJ, "Dr. Lambert opines [Plaintiff] is unable to meet competitive standards or unable to function in numerous areas, for instance, she would be unable to remember short and simple instructions, maintain attention for two-hour segments, complete a normal workday and get along with co-workers and peers." (*Id.* at 28). One reason for not assigning more weight to Dr. Lambert's opinions was the lack of treatment notes to substantiate the opinion. (*Id.*). In addressing the lack of treatment notes, the ALJ stated:

> While Dr. Lambert alleges severe functional limitations related to significant symptomatology, there is no point of comparison, as there are no supporting treatment notes. Rather, the record contains her initial March 2016 evaluation, which is heavily based upon [Plaintiff] and her mother's subjective reports and responses to questionnaires. (3F). [Plaintiff's] representative also acknowledges the lack of treatment notes from Dr. Lambert. (Hearing Testimony).

(*Id.*) As noted by the ALJ, at the administrative hearing, the issue of the missing treatment records from Dr. Lambert was raised and Plaintiff's attorney stated:

> The only outstanding evidence we're waiting for is a pending – is the medical records from Dr. Lambert [PHONETIC], the updated records. I just – we've been trying, for several months trying to get her records. It's my understanding that the records have come in yesterday and they're being

submitted right now.  She's essentially a one-man, one-woman show essentially.  It's a small office so she's kind of slow to get us her notes, but they—they're being submitted currently.

(Dkt. 7 at 44-45).

Following the hearing, on November 20, 2018, Plaintiff submitted a letter to the ALJ concerning the missing records.  (*Id.* at 303).  The letter informed the ALJ that Plaintiff unsuccessfully attempted to collect the missing records by making multiple requests and phone calls to Dr. Lambert.  (*Id.*).  Despite these requests, Plaintiff still had not received the records.  (*Id.*).  Plaintiff requested that the ALJ provide assistance in obtaining Dr. Lambert's treatment records.  (*Id.*).  The ALJ sent a letter to Dr. Lambert on January 29, 2019, requesting the records but no response was received.  (*Id.* at 676-77).

Defendant argues that the ALJ took reasonable steps to obtain the records and that no further attempts were warranted.  (*See* Dkt. 11-1 at 17).  Defendant further argues that because the record upon which the ALJ based his determination was sufficient and adequate to make a determination, the ALJ was not required to make any additional efforts to obtain the missing records.  Specifically, the Commissioner argues that the administrative record contained complete records from Dr. Miller, who provided mental health treatment to Plaintiff, and Dr. Cirillo, who treated Plaintiff's mental and neurological/developmental impairments, which provided the ALJ with sufficient insight into Plaintiff's functioning to allow him to properly assess Plaintiff's RFC.

The Court disagrees that the missing records were not necessary, and finds that Dr. Lambert's lack of a timely response to the requests did not relieve the ALJ of his duty to develop the record in this instance.  As explained above, "[t]he ALJ must 'make every

reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa*, 2016 WL 6517788, at *3 (quoting *Pratts*, 94 F.3d at 39).  Here, the ALJ did not make every reasonable effort to assist Plaintiff in obtaining records from Dr. Lambert.  The record is clear that Plaintiff received ongoing treatment from Dr. Lambert and that substantial treatment records were missing from the record, which was explicitly raised with the ALJ on more than one occasion.  It would be difficult to dispute that these records likely contained information relevant to the ALJ's evaluation of Plaintiff's alleged disability.  Indeed, the ALJ himself acknowledged the importance of receiving the records at the conclusion of the administrative hearing:

> ALJ: All right.  So we are going to get Dr. Lambert's records.  And so, [Plaintiff], again, I'm going to ask you to advocate for yourself, all right, and tell Dr. Lambert—I have not seen what she's submitted, but we have the original records that she submitted back in 2016.  I need all the updated records through the current date, okay?
>
> ATTY: Your Honor, do you still want us to continue to pursue that, as well?  We gave you an 827.  Can we continue our efforts, as well?
>
> ALJ: Right.  Yes, you can continue the effort and we'll see who gets there first.  If I get it first, you'll get it proffered to you, and if you get it first, you'll submit it to the record, okay?

(Dkt. 7 at 94).  *See also Kennedy v. Comm'r of Soc. Sec.*, No. 17-CV-908-FPG, 2019 WL 988889, at *3 (W.D.N.Y. Feb. 26, 2019) ("The ALJ himself had determined that such records were pertinent to his determination on plaintiff's claims when he kept the record open and requested these records from BGH following the hearing.").

The ALJ could have attempted to secure these records through a subpoena to Dr. Lambert to ensure that the record was complete before rendering his decision.  *See Harris*

*v. Berryhill*, 293 F. Supp. 3d 365, 369 (W.D.N.Y. 2018) ("The fact that the essential treatment records were requested, but not received, does not obviate the ALJ's independent duty to develop the record, particularly since the ALJ could have exercised his power to subpoena them, but did not.") (internal quotations and citations omitted); *Davis v. Colvin*, No. 15-CV-479-MJR, 2016 WL 4708515, at *8 (W.D.N.Y. Sept. 9, 2016) ("Given the significance of the missing records and the impact their absence had on the ALJ's decision, the ALJ should have tried to obtain the records on his own after not hearing from [the plaintiff's] counsel. By not doing so, the ALJ created a gap in the record that necessitates remand.").

The necessity of the missing records is apparent in the written determination, particularly with regard to the weighing of opinion evidence from Dr. Lambert. As noted, one reason the ALJ gave for not assigning more weight to Dr. Lambert's opinion was the lack of treatment records. The ALJ found Dr. Lambert's opinion not compelling as compared to the evidence in the record but conceivably, that conclusion could change depending on what is contained in the missing records. In addition, Dr. Lambert's opinions as to Plaintiff's limitations were far more restrictive than the ALJ's RFC and were the opinions credited, it may have directed a finding that Plaintiff was disabled under the Act. *See Johnnie J. v. Comm'r of Soc. Sec.,* No. 20-CV-00919-MJR, 2021 WL 2935053, at *5 (W.D.N.Y. July 13, 2021) ("The ALJ's failure to develop the record with the missing rheumatology records was not harmless because he relied on the absence of the records to discount Plaintiff's reported lupus symptoms and limitations."); *Kennedy*, 2019 WL 988889, at *3 (remanding where ALJ failed to subpoena records making it "simply

impossible to conclude with an absolute certainty the degree to which such records address plaintiff's limitations, and whether or not their review would persuade the ALJ to alter his decision regarding plaintiff's disability in general and RFC in particular" but it was clear that "the review of the missing records could be central to the ALJ's disability determination"); *Shaffer v. Comm'r of Soc. Sec.*, No. 16-CV-874-FPG, 2018 WL 5668511, at *2 (W.D.N.Y. Nov. 1, 2018) ("Had the ALJ obtained the missing records from Spectrum, it is possible that he would have afforded more weight to NP Turk's opinion, which was favorable to Plaintiff.").

In sum, the ALJ issued his determination based on a medical record he knew was incomplete. The Court recognizes that the record contains information contrary to some of the assessments made by Dr. Lambert; however, the ALJ evaluated this information, and Dr. Lambert's opinion, without the benefit of the complete medical record. The information contained in the missing records likely is important and may influence the ALJ's analysis of opinion evidence in the record, particularly the opinion of Dr. Lambert. On remand, the ALJ is directed to exercise his duty to develop the record to ensure that it is complete, including working to obtain any missing treatment records from Dr. Lambert.

B.  **Plaintiff's Remaining Argument**

As set forth above, Plaintiff has identified an additional reason why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. *See, e.g., Samantha D. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1280 (ATB), 2020 WL 1163890,

at *10 (N.D.N.Y. Mar. 11, 2020); *Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 240-41 (W.D.N.Y. 2019).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 11) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 7, 2021
Rochester, New York